647 P.2d 868

**HARRIS BOOKS, INC., a New Mexico corporation, Plaintiff-Appellant,**

v.

**CITY OF SANTA FE, et al., Defendants-Appellees,**

v.

**HARRIS BOOKS, INC., a foreign corporation, Defendant-Appellant.**

No. 13767.

Supreme Court of New Mexico.

June 30, 1982.

Michael E. Vigil, Jeffrey M. Libit, Albuquerque, Arthur M. Schwartz, Denver, Colo., for plaintiff-appellant.

Frank R. Coppler, Richard C. Bosson, Santa Fe, for defendants-appellees.

OPINION

PAYNE, Justice.

This case involves an attempt by the City of Santa Fe to regulate the location of adult bookstores. After careful considera-tion of the ordinance, we conclude that it is unconstitutionally vague and cannot be enforced.

At the outset, we emphasize the limited scope of our holding. The City proceeded on the basis that the speech involved was protected. Thus we are not, from a legal standpoint, dealing with obscenity, which is not entitled to first amendment protection and may therefore be outlawed. *Paris Adult Theatre I. v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). We consider the ordinance solely as a time, place and manner restriction on protected speech.

This appeal is a consolidation of two separate actions brought by the parties in district court. The City adopted the ordinance involved as Chapter 37 of the Santa Fe Code, now codified as Santa Fe, N.M., Code Ch. 3, art. I (1981). Thereafter, Harris Books, Inc., which operated an "Adult Bookstore" under the definition in the ordinance, filed a complaint seeking a declaratory judgment that the ordinance was unconstitutional. The City filed a separate suit for an injunction against the continued operation of the bookstore in violation of the ordinance. The actions were consolidated for trial and the district court found for the City, granting its requested relief and denying the relief sought by Books. Books has appealed.

The primary contention of Books, and the only one we address here, is that the ordinance is unconstitutionally vague. The relevant section of the ordinance reads as follows:

3-1-4 LOCATION OF ADULT BOOKSTORES, MOVIE THEATERS AND NEWSRACKS.

—No person, whether as a principal or agent, clerk or employee, either for himself or any other person, or as an officer of any corporation, or otherwise, shall place, maintain, own or operate any adult bookstore, adult movie theater or adult newsrack within one thousand feet of any parcel of real property on which is located any of the following facilities:

A. a school primarily attended by minors;

B. a church which conducts religious education classes for minors;

C. a public park, or public recreation facility;

D. a residential area; or

E. a business frequented by minors.

The district court found that "[t]he current location of Harris Books, Inc. on Cerrillos Road is within 1,000 feet of a nonconforming use residence." This finding was the basis for the court's determination that the bookstore's operation in the existing location violated the ordinance, justifying the injunction.

Uncontested evidence at trial suggests that the bookstore was also located within 1,000 feet of a family restaurant. The City claims this constitutes an independent ground for the court's holding, while Books asserts that the phrase "a business frequented by minors" is unconstitutionally vague. Because the trial court did not make a finding on this question, we decline to assume it was an independent ground for the decision and accordingly do not decide whether this phrase is unconstitutionally vague.

Books asserts that by referring simply to "a residential area" the ordinance leaves enforcement to the subjective discretion of the enforcement officer. Although deference is given to the interpretation of the ordinance by those charged with administration, *Texas Nat. Theatres v. City of Albuquerque*, 97 N.M. 282, 639 P.2d 569 (1982), the City's own witness, the zoning enforcement officer, could not give a uniform definition of the phrase. At one point the witness stated that two or more houses would be necessary to have a "residential area," while at other points he said that one residence would not receive less protection than several and that a multifamily apartment building would not constitute a "residential area." The term cannot refer to a residential zone since the "nonconforming use residence" which supported the trial court's conclusion was actually located in a commercial zone.

The City claims that there is no need for further statutory definition of "residential area" because its plain meaning is an area of two or more residential structures.

The meaning which is so plain to the City is not so obvious to us. Since we are dealing with speech entitled to protection by the first amendment, each term of the ordinance must be specific enough to afford notice to potential violators. *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *See Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

The City has discussed at length its police power to regulate "adult" entertainment through zoning ordinances as recognized in *Young v. American Mini-Theaters*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

The *Young* case involved an ordinance which provided that an adult theater may not be located within 1,000 feet of any two other "regulated uses" or within 500 feet of a residential area. The City claims that it fashioned its ordinance "with a close eye" on the *Young* decision and that the 1,000 foot provision in the City's ordinance "is virtually identical with the Detroit ordinance approved in [*Young*]." The City's eye failed to perceive footnote 2 in *Young*:

The District Court held that the original form of the 500-foot restriction was invalid because it was measured from "any building containing a residential, dwelling or rooming unit." The city did not appeal from that ruling, but adopted an amendment prohibiting the operation of an adult theater within 500 feet of any area zoned for residential use. The amended restriction is not directly challenged in this litigation.

The federal district court which heard the *Young* case at the trial level considered the nature of the Detroit ordinances and noted that they "prohibit [the location of adult bookstores] within 500 feet of a residential dwelling or rooming unit." *Nortown Theatre Incorporated v. Gribbs*, 373 F.Supp. 363, 366 (E.D.Mich.1974). Thus, not only did the term "residential area" used by the Supreme Court in *Young* have a meaning different from that which the City now claims

is "clear" on the face of the ordinance, but the term was deleted in a subsequent amendment and was not actually considered in *Young*.

The federal district court held that the original 500-foot restriction was invalid under the equal protection clause because it was not necessary to promote any expressed compelling state interest. This holding was not appealed. The City asserts that its restriction does promote a compelling interest. We need not address the claim because the ordinance fails for vagueness; however, we note that the concurring opinion in *Young* considered it essential that the governmental interest prompting the 1,000-foot zone between regulated uses was "wholly unrelated to any suppression of free expression." *Young, supra,* 427 U.S. at 81, 96 S.Ct. at 2457–58 (Powell, J., concurring). For example, the justification must be based on interests in health, safety, etc., not merely on a desire to ban protected speech.

In short, we find little similarity in the purpose, wording, or effect between the City's ordinance and the ordinances considered in *Young*.

Books also raised questions as to the method of measuring the distances and as to the amortization period provisions of the ordinance. In light of our disposition of the vagueness issue, we do not reach these issues.

Accordingly, the judgment below is reversed.

IT IS SO ORDERED.

RIORDAN, J., and WOOD, Judge, concur.